IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CANADA GOOSE INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. _____ |
| Plaintiff, | | |
| v. | | JURY TRIAL DEMANDED |
| GOOSE COUNTRY, LLC, | | |
| Defendant. | | |

**COMPLAINT**

Plaintiff Canada Goose Inc. for its complaint against Defendant Goose Country, LLC alleges as follows:

**THE PARTIES**

1. Plaintiff Canada Goose Inc. ("Canada Goose") is a corporation organized and existing under the laws of Canada, with its principal place of business at located at 250 Bowie Avenue, Toronto, Ontario, M6E 4Y2, Canada.

2. Canada Goose makes and sells apparel, including the outerwear for which it is famous, in famed shopping districts throughout the world. As part of its international presence, Canada Goose has extensive operations in the United States.

3. Canada Goose merchandise can be purchased at notable retail locations, such as Nordstrom, Saks Fifth Avenue, Neiman Marcus, and Bloomingdale's; at Canada Goose branded retail stores, including those located on Chicago's Michigan Avenue, in New York's SoHo

shopping district, and at the Mall of America in Minnesota; and via the internet from a variety of e-commerce websites or from Canada Goose's own website at www.canadagoose.com/us/.

4. Upon information and belief, Defendant Goose Country, LLC ("Goose Country") is a domestic limited liability company recently formed in the State of New Jersey.

5. Goose Country sells apparel, particularly outerwear, through two retail stores or via the website www.originalgoosecountry.com. One of the aforementioned retail stores is located in this judicial district at 5220 Fashion Outlets Way, Suite 1183, Rosemont, Illinois 60018.

**NATURE OF ACTION AND JURISDICTION**

6. This is an action for trademark infringement, trademark dilution, unfair competition and false designation of origin, and unjust enrichment brought pursuant to the Illinois Uniform Deceptive Trade Practices Act, 15 U.S.C. § 1051, et seq. ("the Lanham Act"), and federal and state common law, including the law of the State of Illinois.

7. This Court has jurisdiction over this action at least under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and Title 28 of the United States Code, §§ 1331 and 1338, and supplemental jurisdiction over Canada Goose's claims under state law under 28 U.S.C. § 1367(a). This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs, and is between a citizen of Canada and a citizen of the State of New Jersey.

8. This Court has personal jurisdiction over Goose Country because Goose Country regularly conducts business in this district, including by operating a retail business in this judicial district. This Court also has personal jurisdiction over Goose Country because Goose Country has committed tortious acts and sold infringing products in this State and district that are the subjects of the claims set forth herein. Goose Country has purposefully availed itself of the privilege of

conducting business with residents of this district and has established sufficient minimum contacts with the State of Illinois such that it should reasonably and fairly anticipate being brought into court in Illinois.

9. Venue is proper in this district under 28 U.S.C. § 1391.

## FACTS

**A. Canada Goose and Its GOOSE Marks.**

10. Canada Goose is one of the world's premier brands of apparel, and is well known for its outerwear, namely, coats, parkas, jackets, vests, pullovers, shirts, headwear, scarves, gloves, and mittens.

11. In the United States, Canada Goose branded products are sold at Canada Goose branded retail stores, at the more than 450 third-party retail locations, such as Nordstrom, that carry the products, and via the Canada Goose website and various other e-commerce websites.

12. Sales of Canada Goose branded products in the United States have exceeded CAD$100 million per year since at least as early as fiscal year 2016 and were over CAD$275 million in 2020.

13. The Canada Goose brand has a reputation of providing Canadian-made luxury that was designed to meet the demands of the Arctic.

14. Over the last several years, the Canada Goose brand's sales and presence in the United States has grown substantially and Canada Goose is a staple in the film industry for cold weather film crews.

15. Canada Goose has been commercially using numerous GOOSE trademarks in connection with the promotion and sale of clothing and related products and services, including

retail store services featuring outerwear, in the United States since at least as early as 1994, twenty-four (24) years before the filing date of Goose Country's trademark applications.

16. Canada Goose has used its CANADA GOOSE mark and CANADA GOOSE ARCTIC PROGRAM design mark in the United States since at least 1998. Canada Goose has used these trademarks in connection with outerwear, namely, coats, parkas, jackets, vests, pullovers, shirts, headwear, scarves, gloves, and mittens substantially made of goose down (where applicable). Canada Goose's marks are further used in connection with retail store services featuring outerwear, clothing, apparel, footwear, headwear; and online retail store services featuring outerwear, clothing, apparel, footwear, and headwear.

17. Between 1994 and 2015, Canada Goose branded products were sold to customers in the United States through a variety of third-party retailers and via the internet on various e-commerce websites as well as through Canada Goose's own website. The first Canada Goose branded retail store opened in the U.S. in New York, New York, on November 17, 2016.

18. Since then, Canada Goose has continued to expand the number of Canada Goose branded retail locations across the United States. Canada Goose opened its flagship Michigan Avenue, Chicago store, shown below, in 2017.



19. Canada Goose owns, among others, the following United States Trademark Registrations (Plaintiff's "GOOSE Marks"):

| Mark | Reg. No. Reg. Date | Goods |
|---|---|---|
| CANADA GOOSE | 4,455,111 Dec. 24, 2013 | (Cl 25) Outerwear, namely, coats, parkas, jackets, vests, pullovers, shirts, headwear, scarves, gloves and mittens, substantially made of goose down, where applicable |
| CANADA GOOSE | 5,558,213 Sept. 11, 2018 | (Cl 35) Retail store services featuring outerwear, clothing, apparel, footwear, headwear; online retail store services featuring outerwear, clothing, apparel, footwear, headwear |
| (Canada Goose Arctic Program logo) | 3,254,771 Jun. 26, 2007 | (Cl 25) Clothing, namely parkas, coats, jackets, pullovers, vests, sweaters, shirts, anoraks, and headwear, substantially made of goose down, where applicable |
| (Canada Goose Arctic Program logo) | 5,598,313 Nov. 6, 2018 | (Cl 35) Retail store services featuring outerwear, clothing, apparel, headwear; online retail store services featuring outerwear, clothing, apparel, headwear |

Current printouts of information from the electronic database records of the USPTO showing the current status and title of these registrations are attached hereto as **Exhibit A**.

20. An example of Canada Goose's use of its GOOSE Marks on its apparel is depicted below.



21. Canada Goose has given notice of its registered rights in its GOOSE Marks by using the ® symbol in connection with its registered trademarks.

22. Canada Goose's registered GOOSE Marks are valid and subsisting and are prima facie evidence of Canada Goose's exclusive right to use said marks in commerce on the goods and services specified in each registration. In addition, Registration Nos. 3,254,771 and 4,455,111 are incontestable under Section 15 of the Lanham Act (15 U.S.C. § 1065) and are, therefore, conclusive evidence of the validity of the registered marks, of registration of the marks, of Canada Goose's ownership of the marks, and of Canada Goose's exclusive right to use the marks in commerce under § 33(b) of the Lanham Act (15 U.S.C. § 1115(b)).

23. United States Trademark Registration No. 5,558,213 was filed on June 6, 2016, and was registered on September 11, 2018, for CANADA GOOSE in connection with retail store services featuring outerwear, clothing, apparel, footwear, headwear; and online retail store services featuring outerwear, clothing, apparel, footwear, and headwear. Through its online and retail stores, Canada Goose has used the CANADA GOOSE mark in connection with all the services identified in its Reg. No. 5,558,213 for many years without interruption.

24. United States Trademark Registration No. 5,598,313 was filed on June 6, 2016, and was registered on November 6, 2018, for CANADA GOOSE ARCTIC PROGRAM (stylized as seen above in section 12) in connection with retail store services featuring outerwear, clothing, apparel, headwear; and online retail store services featuring outerwear, clothing, apparel, and headwear. Through its online and retail stores, Canada Goose has used the CANADA GOOSE ARCTIC PROGRAM mark in connection with all the services identified in its Reg. No. 5,598,313 for many years without interruption.

25. Canada Goose and its GOOSE Marks are well known, and consumers have come to know, rely upon, and recognize the GOOSE Marks as identifying its branded products and retail stores.

26. Canada Goose has expended a substantial amount of money and effort in advertising and promoting its GOOSE Marks. Since 2016, Canada Goose has invested tens of millions of dollars on marketing efforts directed to promotion of the GOOSE Marks in the United States.

27. The GOOSE Marks have been promoted in print and digital advertisements. The GOOSE Marks also have received numerous media mentions in widely read publications, such as Forbes, The New York Times, Bloomberg, the Chicago Tribune, Esquire, and many more. Canada Goose is also a long-time sponsor of the Sundance Film Festival—the largest independent film festival in the United States hosted annually in Park City, Utah.

28. The GOOSE Marks also have had an extremely high profile on social media for many years, having billions of social impressions in the year 2020 alone.

29. The GOOSE Marks also have appeared on outerwear worn on screen in many major motion pictures over the years, including The Day After Tomorrow (2004), National Treasure (2004), Mr. Popper's Penguins (2011), Captain America: The First Avenger (2011), and Man of Steel (2013).

30. As a result of these substantial promotional, advertising, publicity, and public relations activities, the GOOSE Marks have acquired substantial goodwill and are an extremely valuable commercial asset.

31. Moreover, Canada Goose is among the most innovative and luxurious providers of outerwear in the world today. As a result, the company and its products have been the recipients

of numerous awards, including Fast Company's 2021 Most Innovative Companies, a Forbes 2019 Retail Award for Best In-Store Innovation, a top 20 ranking in Lyst's Q4 2019 Hottest Brands List, and a Men's Health's 2019 Outdoor Award for Best Down Jacket.

32. Canada Goose's GOOSE Marks are distinctive and are inherently distinctive, serving to identify and indicate the source of Canada Goose's products to the consuming public, and to distinguish Canada Goose's products and services from those of others.

33. As a result of, *inter alia*, Canada Goose's exclusive, continuous, and substantial use of the GOOSE Marks, Canada Goose's exclusive, continuous, and substantial advertising and promoting of products bearing the GOOSE Marks, and the publicity and attention that has been paid to the GOOSE Marks, the GOOSE Marks have become famous in the United States and have acquired valuable goodwill and substantial secondary meaning in the marketplace, as consumers have come to uniquely associate the GOOSE Marks as source identifiers of Canada Goose.

34. Canada Goose also has common law rights in the GOOSE Marks in Illinois and throughout the United States.

**B.    Goose Country's Unlawful Conduct.**

35. Goose Country, with constructive and, upon information and belief, actual knowledge of Canada Goose's GOOSE Marks, began advertising, promoting, selling, and offering for sale outwear under the marks GOOSE COUNTRY and ORIGINAL GOOSE COUNTRY (the "GOOSE COUNTRY Marks").

36. Goose Country has sold and offered for sale outerwear products under the GOOSE COUNTRY Marks in interstate commerce.

37. Goose Country has sold and offered for sale outerwear products under the GOOSE COUNTRY Marks in Illinois, including through its retail store located in the Fashion Outlets of

Chicago in Rosemount, Illinois. The online map for the Fashion Outlets of Chicago identifies the Goose Country store location as follows:



38. Goose Country, with constructive and, upon information and belief, actual knowledge of Canada Goose's GOOSE Marks, adopted a web address incorporating the GOOSE COUNTRY Marks at www.originalgoosecountry.com and deployed the GOOSE COUNTRY Marks on various social media accounts (e.g., Instagram).

39. An example of Goose Country's use of the GOOSE Marks on its apparel is depicted below.



40. Canada Goose has been corresponding with Goose Country since at least as early as December of 2018 regarding Canada Goose's GOOSE Marks and Goose Country's unlawful use of the GOOSE COUNTRY Marks. Accordingly, Goose Country has had actual notice of Canada Goose's superior rights in the GOOSE Marks and its objection to Goose Country's use of the GOOSE COUNTRY Marks no later than December of 2018. Despite this, Goose Country continues to use the GOOSE COUNTRY Marks in connection with the promotion and sale of its competing outerwear products.

41. Goose Country is aware of the vast and valuable goodwill and reputation represented and symbolized by Canada Goose's GOOSE Marks. Goose Country also is aware that Canada Goose's consumers and potential consumers rely upon Canada Goose's GOOSE Marks as distinguishing Canada Goose's products and services from the products and services of others.

42. Canada Goose's GOOSE Marks became famous and acquired secondary meaning in the United States before Goose Country commenced its unlawful use of the GOOSE COUNTRY Marks.

43. Goose Country's use of the GOOSE COUNTRY Marks has always been and continues to be without the permission, consent, or authority of Canada Goose.

C. **Effect of Goose Country's Conduct on Canada Goose and the Consuming Public.**

44. The goods and services marketed and sold by Canada Goose under its GOOSE Marks are identical or closely related to the goods and services marketed and sold by Goose Country under the GOOSE COUNTRY Marks.

45. The look and feel of the outerwear garments offered by Goose Country under the GOOSE COUNTRY Marks bears a remarkable similarity to the look and feel of the outerwear garments offered by Canada Goose under its GOOSE Marks.

46. Goods and services marketed and sold by Canada Goose under its GOOSE Marks have long featured a unique circular patch with a red perimeter, placed on the shoulder of a jacket or coat.

47. Goose Country's outerwear has also featured a circular patch with a red perimeter that is placed on the shoulder of a jacket or coat.

48. Goose Country's intentional mimicry of the look and feel of Canada Goose's products and logos underscores the willful nature of Goose Country's infringement of Canada Goose's GOOSE Marks.

49. The outerwear garments offered by Goose Country under the GOOSE COUNTRY Marks compete directly with the outerwear garments offered by Canada Goose under its GOOSE Marks.

50. In the United States, Canada Goose operates in the same geographic area now served by Goose Country. The outerwear products of both parties are offered nationwide via the internet. Moreover, Goose Country's New York retail shop is less than one mile from Canada Goose's retail shop in SoHo, and Goose Country's Illinois retail shop is just over fifteen miles from Canada Goose's retail shop on Michigan Avenue.

51. The GOOSE COUNTRY Marks are similar in sight, sound, and commercial impression to Canada Goose's GOOSE Marks. In addition to the overlapping GOOSE term, the GOOSE Marks reference the country of Canada. The country of Canada is well known for its geese. The GOOSE COUNTRY Marks thus convey a similar commercial impression in their combining of the term GOOSE with COUNTRY. A similar commercial impression is also conveyed when the term ORIGINAL is added to GOOSE COUNTRY.

52. The goods sold under the parties' respective marks also are sold at nearly identical price points. For example, a typical jacket by Canada Goose bearing its GOOSE Marks retails at $995.00, while a jacket featuring a similar look and feel sold by Goose Country under the GOOSE COUNTRY Marks retails at $949.00. The similarity in price point indicates the parties' respective products target the same category of consumer.

53. Goose Country's goods and services advertised, promoted, offered for sale, or sold under the GOOSE COUNTRY Marks and derivatives of those marks are offered and/or promoted in the same channels of trade as the Canada Goose goods and services offered under its GOOSE Marks.

54. Goose Country's continued use of the GOOSE COUNTRY Marks and derivatives of those marks on its websites, in its advertising and promotional materials, on its signage, and on its products is likely to diminish the goodwill associated with Canada Goose's GOOSE Marks.

55. Goose Country derives and will continue to derive substantial revenue from its products and services provided under the GOOSE COUNTRY Marks and derivatives of those marks, all without the permission, authority, or consent of Canada Goose.

56. Goose Country's unauthorized use of the GOOSE COUNTRY Marks and derivatives of those marks is likely to cause confusion or mistake or to deceive consumers into believing that Goose Country's unauthorized goods and services advertised, promoted, and offered under the GOOSE COUNTRY Marks and derivatives of those marks are sponsored, licensed or authorized by, or affiliated, connected or otherwise associated with Canada Goose or that Canada Goose's goods and services offered under Canada Goose's GOOSE Marks are sponsored, licensed or authorized by, or affiliated, connected, or otherwise associated with Goose Country when the same is not true.

57. Goose Country's continued use of the GOOSE COUNTRY Marks, and derivatives of those marks, is with full knowledge of the prior ownership by Canada Goose of the GOOSE Marks, of Canada Goose's rights to use and control the use of such marks, and of Canada Goose's objections to Goose Country's own continued use of the GOOSE COUNTRY Marks.

58. Goose Country has acted and continues to act without regard to Canada Goose's trademark rights and goodwill in the GOOSE Marks.

59. As a result of Goose Country's unauthorized use of the GOOSE COUNTRY Marks and derivatives of those marks, Goose Country is being unjustly enriched at Canada Goose's expense, and Canada Goose is being damaged.

60. Goose Country's unauthorized use of the GOOSE COUNTRY Marks and derivatives of those marks in association with its goods and services has significantly injured Canada Goose's interests. Specifically, Goose Country (a) has traded upon and threatens to further trade upon the significant and valuable goodwill in Canada Goose's GOOSE Marks; (b) is likely to cause public confusion as to the source, sponsorship, or affiliation of Goose Country's products or services; (c) has damaged and threatens to further damage Canada Goose's significant and valuable goodwill in Canada Goose's GOOSE Marks; (d) has injured and threatens to further injure Canada Goose's right to use Canada Goose's GOOSE Marks as the exclusive indicia of origin of Canada Goose's goods and services in Illinois and throughout the United States; and (e) has lessened the capacity of Canada Goose's GOOSE Marks to indicate that its products and services are sponsored by Canada Goose.

61. Unless these infringing acts by Goose Country are restrained by this Court, they will cause irreparable injury to Canada Goose and to the public, for which there is no adequate remedy at law. If Goose Country is permitted to continue, further damage and irreparable injury will

be sustained by Canada Goose, and others will be encouraged or induced to infringe upon Canada Goose's GOOSE Marks. Through such infringement, the value of the GOOSE Marks will be substantially reduced or destroyed, for which Canada Goose cannot be adequately compensated at law.

**D.     Willful Nature of Goose Country's Actions.**

62.    Goose Country's acts of trademark infringement, unfair competition and false designation of origin, and trademark dilution complained of herein have been deliberate, willful, intentional, and in bad faith, with full knowledge and conscious disregard of Canada Goose's rights. In view of the egregious nature of Goose Country's actions, this is an exceptional case within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

**COUNT I**
**FEDERAL TRADEMARK INFRINGEMENT**

63.    Canada Goose repeats the allegations of paragraphs 1-62 of this Complaint as if fully set forth herein.

64.    The acts of Goose Country complained of herein are likely to cause confusion, mistake, or deception as to origin, sponsorship, or approval and therefore constitute federal trademark infringement in violation of 15 U.S.C. § 1114(1). By reason of Goose Country's bad faith and willful infringement, Canada Goose is entitled to recover actual damages, treble damages, an accounting for Goose Country's profits, attorney fees, the costs of this litigation pursuant to 15 U.S.C. § 1117, and injunctive relief pursuant to 15 U.S.C. § 1116.

**COUNT II**
**FEDERAL TRADEMARK DILUTION**

65.    Canada Goose repeats the allegations of paragraphs 1-64 of this Complaint as if fully set forth herein.

66. This count states a cause of action for dilution of the distinctive quality of the GOOSE Marks in violation of 15 U.S.C. § 1125(c)(1).

67. The GOOSE Marks are distinctive and famous marks. The GOOSE Marks have long been used on and in connection with the sale of Canada Goose's outerwear, have long been the subject of substantial advertising and promotion, and are widely recognized by consumers and those in the trade.

68. Goose Country's acts as alleged above were commenced and committed from a time well after the GOOSE Marks became famous.

69. Goose Country's acts have lessened the capacity of the GOOSE Marks to identify and distinguish the goods of Canada Goose. Goose Country's acts have blurred the unique association that has heretofore existed between the GOOSE Marks and the outerwear produced and sold by Canada Goose. Accordingly, Goose Country's acts are in violation of 15 U.S.C. § 1125(c)(1) in that they have caused a dilution of the distinctive quality of the GOOSE Marks to the irreparable injury and damage of Canada Goose.

70. Canada Goose is entitled to injunctive relief and is also entitled to recover at least Goose Country's profits, Canada Goose's actual damages, enhanced profits and damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(c), 1116, and 1117.

## COUNT III
## FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION

71. Canada Goose repeats the allegations of paragraphs 1-70 of this Complaint as if fully set forth herein.

72. The acts of Goose Country complained of herein constitute unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

Canada Goose is entitled to recover actual and treble damages, attorney fees, the costs of this litigation pursuant to 15 U.S.C. § 1117, and injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT IV
## DECEPTIVE TRADE PRACTICES UNDER 815 ILCS § 510

73. Canada Goose repeats the allegations of paragraphs 1-72 of this Complaint as if fully set forth herein.

74. Goose Country's advertisements, marketing, promotions, offers to sell, sales, and distribution of goods and services under the GOOSE COUNTRY Marks, in direct competition with Canada Goose, violates the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, at least by palming off/passing off of Goose Country's goods, by simulating Canada Goose's trademarks in an intentional and calculated manner that is likely to cause consumer confusion as to origin and/or sponsorship/affiliation, and by creating the false and misleading impression that the Goose Country goods and services are manufactured by, authorized by, or otherwise associated with Canada Goose.

75. On information and belief, Goose Country's conduct has been intentional, willful, and malicious.

76. Goose Country's deceptive trade practices have caused and, unless enjoined, will continue to cause substantial and irreparable injury to Canada Goose for which Canada Goose has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with goods and services offered under the GOOSE Marks.

77. Canada Goose is entitled to injunctive relief, and is also entitled to recover Goose Country's profits, Canada Goose's actual damages, enhanced profits and damages, and reasonable attorney fees under at least 815 ILCS § 510.

## COUNT V
## UNFAIR COMPETITION UNDER ILLINOIS COMMON LAW

78. Canada Goose repeats the allegations of paragraphs 1-77 of this Complaint as if fully set forth herein.

79. By engaging in the foregoing acts, Goose Country has knowingly engaged in unfair competition in violation of the common law of the State of Illinois.

80. Canada Goose is entitled to recover actual and punitive damages for Goose Country's unfair competition.

## COUNT VI
## TRADEMARK INFRINGEMENT UNDER ILLINOIS COMMON LAW

81. Canada Goose repeats the allegations of paragraphs 1-80 of this Complaint as if fully set forth herein.

82. By engaging in the foregoing acts, Goose Country has knowingly engaged in unlawful trademark infringement and passing off in violation of the common law of the State of Illinois.

83. Canada Goose is entitled to recover actual and punitive damages for Goose Country's trademark infringement.

## COUNT VII
## UNJUST ENRICHMENT

84. Canada Goose repeats the allegations of paragraphs 1-83 of this Complaint as if fully set forth herein.

85. Goose Country's advertisements, promotions, offers to sell, sales, and distribution of its goods and services under the GOOSE COUNTRY Marks, in direct competition with Canada Goose, constitute unjust enrichment, at least because Goose Country has wrongfully obtained benefits at Canada Goose's expense and has operated with an undue advantage.

86. Goose Country's unjust enrichment at Canada Goose's expense has been intentional, willful, and malicious.

87. Canada Goose is entitled to injunctive relief and is also entitled to recover at least Goose Country's profits.

**PRAYER FOR RELIEF**

WHEREFORE, Canada Goose prays that:

A. Goose Country, its officers, agents, servants, employees, attorneys, and all those persons in active concert or participation with any of them, be permanently enjoined from using the GOOSE COUNTRY Marks, and any other mark that is confusingly similar to or derived from the GOOSE COUNTRY Marks;

B. Goose Country be ordered to transfer ownership of the domain name www.originalgoosecountry.com, as well as any other domain name that incorporates the GOOSE COUNTRY Marks and any other mark that is confusingly similar to or derived from the GOOSE COUNTRY Marks, to Canada Goose;

C. Goose Country, its officers, agents, servants, employees, attorneys, and all those persons in active concert or participation with any of them, be required to modify all signage, marketing materials, internet and social media content, products, packaging and promotional material to eliminate the GOOSE COUNTRY Marks, and any other mark that is confusingly similar to or derived from the GOOSE COUNTRY Marks;

D. Goose Country, its officers, agents, servants, employees, attorneys, and all those persons in active concert or participation with any of them, be required to deliver to the Court for destruction, or show proof of destruction of, any and all labels, signs, prints, packages, wrappers, receptacles, and advertisements, and any other materials in Goose Country's possession or control

that use the GOOSE COUNTRY Marks, and any other mark that is confusingly similar to or derived from GOOSE COUNTRY Marks;

  E. Goose Country, its officers, agents, servants, employees, attorneys, and all those persons in active concert or participation with any of them, be required to take all reasonably available steps to remove the GOOSE COUNTRY Marks, and any other mark that is confusingly similar to or derived from the GOOSE COUNTRY Marks, as a designator of Goose Country's business from any listing in any business directory, yellow pages, internet directory, Facebook page, Instagram account, social media of any and all kinds, and any other listing or promotion service, as well as with the New Jersey Secretary of State, and with respect to any license to operate on file in New Jersey, Illinois, or any other state or local government or agency;

  F. Goose Country be ordered to file with this Court and to serve upon Canada Goose within 30 days after the entry and service on Goose Country of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Goose Country has complied with the injunction;

  G. Canada Goose recover all damages it sustains as a result of Goose Country's trademark infringement, trademark dilution, and unfair competition and false designation of origin, and that said damages be trebled;

  H. An accounting be directed to determine Goose Country's profits resulting from Goose Country's activities complained of herein, and that such profits be paid over to Canada Goose, increased as the Court finds to be just under the circumstances of this case;

  I. Goose Country and all others acting in concert with it be directed to pay punitive damages to deter Goose Country and all others similarly situated from like unlawful conduct in the future due to Goose Country's unfair competition;

  J.  Canada Goose recover its reasonable attorney fees;

  K.  Canada Goose recover its costs of this action and prejudgment and post-judgment interest; and

  L.  Canada Goose recover such other and further relief as the Court may deem just and appropriate.

## **JURY DEMAND**

Under Fed. R. Civ. P. 38(b), Canada Goose hereby demands a trial by jury on all issues triable as of right by a jury.

Dated: June 30, 2021

Respectfully submitted,

By: /s/ Robert D. Leighton

Rachel Scobie (*pro hac vice* to be filed)
MERCHANT & GOULD P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN 55402-4247
rscobie@merchantgould.com
(612) 336-4667

Robert D. Leighton
GOLDBERG KOHN, LTD.
55 E. Monroe St., Suite 3300
Chicago, IL 60603
robert.leighton@goldbergkohn.com
(312)-201-4000

*Attorneys for Plaintiff Canada Goose Inc.*